Return Date: <u>April 14th 2020, 2:00pm</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

2020 MAR 14 PM 5:06

---------------------------------------------------------------x

In re: Loyce Tamisi

Case No. 1-20-40388-cec
Chapter 13

Debtor(s)

---------------------------------------------------------------x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the annexed application of

<u>Loyce Tamisi</u>, a hearing will be held before the Hon.

<u>**Carla E. Craig**</u>, Bankruptcy Judge, to consider the motion for an Order

granting relief as follows:

<u>MOTION TO VALUE AND DECLARE VOID A TOTALLY UNSECURED LIEN OR CLAIM OF</u>
<u>DLJ MORTGAGE CAPITAL INC (DLJ) UNDER §506 AND FRBP 3012 AND UNDER  §522(f)</u>

PLEASE TAKE FURTHER NOTICE that objections to the granting of the proposed order must
be served to the undersigned at least 7 days before the order is to be heard.
If there are no objections the Court may grant and sign the order without further notice.

**Date and time of hearing:** <u>April 14th 2020, 2:00pm</u>
**Location: U.S. Bankruptcy Court**
**271-C Cadman Plaza East**
**Brooklyn, New York 11201-1800**
**Courtroom #  3529  ,   3   Floor**

Dated: <u>March 14, 2020</u>

Signature

Print name:  Loyce Tamisi
Address:  1350 Pinson St
          Far Rockaway, NY 11691
Phone:
Email:  ltamisi@yahoo.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re:                                                    Case No. 1-20-40388-cec

Loyce Tamisi,                                             Chapter 13
                    Debtor.
-------------------------------------------------------x

## **APPLICATION IN SUPPORT OF VALUATION OF COLLATERAL AND DETERMINATION OF SECURED STATUS  FOR DLJ MORTGAGE CAPITAL INC**

**TO THE HON. Carla E. Craig , Bankruptcy Judge**

I Loyce Tamisi, the debtor respectfully make this application in support of my motion for the following relief to value and declare void a totally unsecured lien or claim of DLJ Mortgage Capital Inc (DLJ) under §506 and FRBP 3012 and under §522(f) and provides the affidavit in support of this motion as follows:

1. The debtor filed a chapter 13 petition on January 22, 2020. The debtor resides at 1350 Pinson st Far Rockaway, NY 11691. The deed is recorded in Queens County borough Block 15659 lot 6 as annexed in "exhibit A" DLJ Mortgage Capital Inc (DLJ) has an assignment recorded in the Queens County ACRIS on 06/22/2007 under document number: 2007061901175001 (annexed "Exhibit F")

2. DLJ Mortgage capital Inc (DLJ) who's servicer is Select Portfolio Servicing Inc (SPS) has a pre-petition foreclosure Judgement Lien on the said property annexed as "exhibit B" for $954,000. The current value of the house is $390,000 as indicated in the attached appraisal annexed as "exhibit C"

3. On 12/10/2019 the debtor received a letter (Letter is attached as Exhibit D) that DLJ Mortgage Capital sold the loan/mortgage to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust (Wilmington Savings Fund) effective 11/15/2019. Therefore DLJ and Wilmington Savings Fund are two separate entities.

4. The debtor received a notice of sale filed in the Queens county on 12/06/2019 indicating a sale date of 11/24/2020. ("attached exhibit B" ). The notice included only DLJ Mortgage Capital and no mention of  Wilmington Savings Fund which was unaware of the sale.

5. Before filing this petition, the debtor faced prejudice and double liability where two parties, DLJ Mortgage Capital with a Judgement lien attached as "exhibit B" and another party, Wilmington Savings Fund Society who claimed that they bought the mortgage "exhibit D". The foreclosure sale created a situation where both parties were making different demands on the same security instrument (mortgage and note) leaving the question of which party is entitled to enforce the debt and collect from the debtor. This situation created a prejudice against the debtor.

6. FRBP § 1322(b)(5) or b(3) provides that a debtor may "cure" a default and restore the debtor to his pre-default conditions. However, this option is no longer available with the creditor DLJ Mortgage Capital because after selling off the mortgage loan, DLJ/SPS does not have secured status or standing or the security instrument, thus their claim could be invalid and no longer enforceable and yet they tried to continue with a foreclosure sale. Furthermore, there is no law supporting that the same security (note and mortgage) securing the foreclosure judgement lien can be held and enforced by two different parties at the same time since it clouds the title. The new party is possibly Wilmington Saving Fund who indicated that they bought the note and mortgage (See Exhibit D)

7. 11 U.S.C. § 1322(b)(2) prohibits a Chapter 13 debtor from modifying the rights of the holder of a claim that is secured only by a security interest in real property that is the debtor's principal residence. However with the underlying foreclosure Judgement lien of DLJ, there is no more security interest since the loan was sold off to another party as indicated in the letter to the debtor in "exhibit D". This judgement lien is no longer attached to the foreclosed property because the security for the debt  was eliminated when DLJ sold the mortgage making it wholly unsecured and can be avoided irrespective of its value. Without the mortgage and note, DLJ is not in any respect a "holder of claim secured by the debtor's residence" hence the value of their claim is $0.00 on the Chapter 13 plan attached as "Exhibit G".

8. The debtor was engaged in a loss mitigation with DLJ annexed as "exhibit E" to cure the default from the Judgment before filing the petition. However, the creditor DLJ, engaged in dual tracking prohibited by 12 C.F.R. § 1024.41 and section 349 of New York's General Business Law ("GBL") for "dual tracking. Under this law, the servicer can't start the foreclosure sale process if a borrower submits a complete loss mitigation application and the application is pending. DLJ/SPS after the sale of the loan still scheduled a sale and phone correspondence said that because they no longer own the loan, they had no legal control over the sale, yet the referee via phone correspondance maintains they are still working for DLJ/SPS.

9. For benefit of the doubt, there is a possibility that the referee was or is unaware of the transfer or sale of the mortgage loan to Wilmington Savings or that DLJ is no longer legally the holder of the loan after they sold it off to Wilmington Savings Fund. In which case, this motion

will also act to give notice of the sale and transfer of the mortgage to Wilmington Savings Fund and to clear up any confusions and perjury on the debtor.

10. DLJ/SPS made misrepresentations to the debtor in violation of New York statutory and common law. As shown in "exhibit E" p.g 2 paragraph 1, DLJ promised not to conduct any sale until it had completed consideration of the loss mitigation. However, by violating the promise, the creditor caused harm to the debtor and the debtor could no longer complete the loss mitigation measures to clear the judgement lien and was instead faced with double liability and perjury with a foreclosure sale date that DLJ did nothing about as promised. The debtor's loan was possibly eligible for the homeowner's relief as required by the 2017 Credit Suisse RMBS settlement. This relief would have enabled the debtor to satisfy the judgement lien under the mandated relief support. Instead the creditor wanted to participate in unjust enrichment by selling the mortgage loan and then collecting on the judgement at the same time.

11. The debtor intends to apply for loan modification within the bankruptcy court's loss mitigation program but  faces hindrance since she is confused and unsure about the right party to initiate loss mitigation. Furthermore, the current double liability perjury makes the debtor seem to be in more debt than actuality and this threatens the debtor's eligibility and ability to create a confirmable chapter 13 plan. Having to account for two different creditors allegedly with the same mortgage and note is not feasible or possible in the plan. Valuation and avoiding the DLJ/SPS lien will save the debtor from irreparable harm and enable the debtor to create a clear and confirmable chapter 13 plan including the court's loss mitigation options.

WHEREFORE, applicant humbly requests the court to value and declare void the totally unsecured claim of DLJ Mortgage Capital Inc (DLJ) under §506 and FRBP 3012 and under §522(f) and for any such other relief this court deems just, fair and proper.

Dated: 03/14/2020

_____
Loyce Tamisi (the debtor)

Exhibit A

**"Exhibit A"**



2006090701387001001E16B5

## RECORDING AND ENDORSEMENT COVER PAGE

### NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

PAGE 1 OF 5

**Document ID:** 2006090701387001
Document Type: DEED
Document Page Count: 4

Document Date: 08-14-2006
Preparation Date: 09-07-2006

**PRESENTER:**
ALLSTAR ABSTRACT
31 STEWART STREET
C/P PICK UP KAREN LEVINE
FLORAL PARK, NY 11001
516-358-0505
WS/AI 4152Q

**RETURN TO:**
AUGI SHIN TELLA, ESQ
89408 STEPHIN BLVD
JAMAICA, NY 11435

### PROPERTY DATA

| Borough | Block Lot | Unit | Address |
|---------|-----------|------|---------|
| QUEENS | 15059 6 | Entire Lot | 1350 PINSON STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN ___ or Document ID ___ or ___ Year ___ Reel ___ Page ___ or File Number ___

### PARTIES

**GRANTOR/SELLER:**
180 HOLDING CORP.
19505 PINSON COURSE
NEW YORK, NY 11423

**GRANTEE/BUYER:**
LOYCE TAMISE
542 HANCOCK ST
BROOKLYN, NY 11233

### FEES AND TAXES

| Mortgage | | |
|----------|---|---|
| Mortgage Amount: | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 |
| Exemption: | | |
| TAXES: County (Basic) | $ | 0.00 |
| City (Additional) | $ | 0.00 |
| Spec (Additional) | $ | 0.00 |
| TASF | $ | 0.00 |
| MTA | $ | 0.00 |
| NYCTA | $ | 0.00 |
| Additional MRT | $ | 0.00 |
| TOTAL | $ | 0.00 |

Recording Fee: $ 57.00
Affidavit Fee: $ 0.00
NYC Real Property Transfer Tax Filing Fee:
$ 75.00
NYS Real Estate Transfer Tax:
$ 2,180.00

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed   09-26-2006 15:23
City Register File No.(CRFN):
2006000540785

NYC HPD Affidavit in Lieu of Registration Statement

*City Register Official Signature*

Exhibit B

**Exhibit B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

DLJ Mortgage Capital, Inc.

Plaintiff,

-against-

Loyce Tamisi, New YOrk City Transit Adjudication
Bureau, New York City Environmental Control
Board, New YOrk City Parking Violations Bureau,
Argent Mortgage Company, LLC, et al

Defendant(s).

Index Number: 7326/07

REDACTION COVER PAGE

CHECK ALL THAT APPLY:

[X] The document filed contains personal information, as defined in 22 NYCRR 202.5(e)
The document filed is REDACTED in accordance with 22 NYCRR 202.5(e)
The document filed is UN-REDACTED in accordance with 22 NYCRR 202.5(e).
   (a) The document filed contains SSN (as authorization by the order specified below).
   (b) The document filed contains confidential personal information as defined
       under 22 NYCRR 202.5(e) (as authorized by the order specified below).
This document was previously filed REDACTED.
Date:
This document was previously filed UN-REDACTED.
Date:
The document filed seeks a remedy under 22 NYCRR 202.5(e)(2).
The document filed seeks a remedy under 22 NYCRR 202.5(e)(3).
Additional Information:

There is a previously filed order of the Court regarding this document:
○ yes / ○ no

Date of order:
Date order filed:
Other identifying information for such order:

The order of the Court is being filed with the redacted / un-redacted document: ○ yes / ○ no
Date of order:
Other identifying information for such order:

Signature of filer:
Print Name: Ted Eric May, Esq.
Counsel appearing for DLJ Mortgage Capital, Inc., its successors and/or assigns

Filer is Unrepresented / Pro Se. ○ yes / ● no
Date: January 10, 2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

DLJ Mortgage Capital, Inc.

Plaintiff(s),

-against-

Loyce Tamisi, New YOrk City Transit Adjudication
Bureau, New York City Environmental Control Board,
New YOrk City Parking Violations Bureau, Argent
Mortgage Company, LLC,

Defendant(s)

Notice of Sale

Index Number: 7326/07

Premises: 1350 Pinson St, Far
Rockaway, NY 11691

NOTICE OF SALE
SUPREME COURT - COUNTY OF QUEENS



DLJ MORTGAGE CAPITAL, INC.,

                    Plaintiff,

Against

LOYCE TAMISI, ET AL.,

                  Defendant(s).

Pursuant to a Judgment of Foreclosure and Sale, duly entered 12/12/2018, I, the undersigned
Referee, will sell at public auction in Courtroom #25 of the Queens County Supreme Court, 88-
11 Sutphin Boulevard, Jamaica, NY 11435, on 1/24/2020 at 10:30am, premises known as 1350
Pinson St, Far Rockaway Queens, NY 11691, and described as follows:
ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon
erected, situate, lying and being in the Borough and County of Queens, City and State of New
York, and designated on the tax maps of the Queens County Treasurer as Block 15659 and Lot 6.
The approximate amount of the current Judgment lien is $954,000.10 plus interest and costs.
The Premises will be sold subject to provisions of the aforesaid Judgment of Foreclosure and
Sale; Index # 7326/2007.
Lisa Jadidian, Esq., Referee.
SHELDON MAY & ASSOCIATES Attorneys at Law, 255 Merrick Road, Rockville Centre, NY
11570
Dated: 11/27/2019    File Number: 32657    MNB

RECEIVED

DEC 0 6 2019

COUNTY CLERK
QUEENS COUNTY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

DLJ MORTGAGE CAPITAL, INC.,

                                    Plaintiff,

LOYCE TAMISI, ET AL.,

                                    Defendant(s).

Affidavit of Service

Index Number: 7326/07

State of New York, County of Nassau          )

I, the undersigned, being duly sworn, states as follows: I am employed in the County of Nassau, State of New York by Sheldon May & Associates, P.C. I am over the age of 18 and not a party to the within action. My business address is 255 Merrick Road, Rockville Centre, New York 11570.

Service was made by Regular Mail on January 10, 2020. I served the following documents; Notice of Sale upon the person or parties designated below at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail Box at the Rockville Centre Post Office, at the addresses set forth below:

| Tamisi, Loyce 1350 Pinson St, Far Rockaway, NY 11691 | New York City Transit Adjudication Bureau 130 Livingstone Street Brooklyn NY 11201 | New York City Environmental Control Board 100 Church Street, New York, NY 10007 |
|---|---|---|
| New York City Parking Violation Bureau 100 Church Street New York, NY 10007 | | Lisa Jadidian, Referee 26-04 Jackson Ave LONG ISLAND CITY, NY 11101-2911 |
| Argent Mortgage Company, LLC 333 Westchester Ave, 1st Floor White Plains, NY 10601 | | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    Rockville Centre, New York
              January 10, 2020

                                                          Edyta Barlik

Sworn to before me this
10 January 2020

Notary Public

TED ERIC MAY
NOTARY PUBLIC, State of New York
No. 02MA5097605
Qualified in Nassau County
My Commission Expires Oct 17, 20

SUPREME COURT
STATE OF NEW YORK, COUNTY OF QUEENS   Index Number 7326/07

DLJ Mortgage Capital, Inc.
                         Plaintiff(s),

-against-

Loyce Tamisi, New YOrk City Transit Adjudication Bureau, New York City Environmental
Control Board, New YOrk City Parking Violations Bureau, Argent Mortgage Company, LLC,
                         Defendant(s).

## Notice of Sale

Sheldon May & Associates, P.C.
Attorneys for Plaintiff
Office and Post Office Address
255 Merrick Road
Rockville Centre, New York 11570
Telephone Number
(516) 763 - 3200

To:

Signature pursuant to rule 130-1.1-a

Print Name: Ted Eric May, Esq.

Service of a copy of the
within is hereby admitted.

Dated:

Attorney(s) for:

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY
that the within is a *(certified)* true copy of a          Duly entered in the office of the clerk of the within
named court on          ,201

☐ NOTICE OF SETTLEMENT
that an order          of which the within is a true copy will be presented for settlement to the Honorable
one of the judges of the within named court, at          on          201   at          .M.

Dated:

Yours, etc.
Sheldon May & Associates, P.C.
255 Merrick Road
Rockville Centre, New York 11570
(516) 763 - 3200

Exhibit C


Exhibit C

## Small Residential Income Property Appraisal Report    File # 1527

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address 13-50 Pinson St | City Far Rockaway    State NY   Zip Code 11691 |
| Borrower Loyce Tamisi | Owner of Public Record Loyce Tamisi    County Queens |
| Legal Description Blk:15659 Lot:6 | |
| Assessor's Parcel # 156590006 | Tax Year 2019    R.E. Taxes $ 4,837 |
| Neighborhood Name Far Rockaway | Map Reference Hagstrom    Census Tract 1032.01 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☐ PUD  HOA $ 0   ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market Value as of 03/03/2020
Lender/Client N/A    Address
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).    Data source is Mls.

### CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?    ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | 2-4 Unit Housing Trends | 2-4 Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE  AGE | One-Unit 60 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)  (yrs) | 2-4 Unit 15 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 200 Low 1 | Multi-Family 12 % |
| | | 800 High 150 | Commercial 8 % |
| | | 500 Pred. 75 | Other vac5 % |

Neighborhood Boundaries North of Atlantic Ocean, South of John F Kennedy Airport, East of Norton Basin and West of Nassau Expressway.
Neighborhood Description   THE SUBJECT'S MARKETING AREA CONSISTS PRIMARILY OF SINGLE AND MULTI FAMILY HOMES THAT VARY IN STYLE AND SIZE WITH CLOSE PROXIMITY TO ALL SUPPORTING AMENTIES, SCHOOLS, EMPLOYMENT AND TRANSPORTATION.

Market Conditions (including support for the above conclusions)   CURRENT MARKET CONDITIONS AND PROPERTY VALUES APPEAR TO BE STABLE. SUPPLY AND DEMAND APPEAR TO BE IN BALANCE.

### SITE

Dimensions subject to survey    Area 2,625 sf    Shape rectangular    View Residential
Specific Zoning Classification B2    Zoning Description Residential
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities Public | Other (describe) | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity ☒ | ☐ 2/100 amp cb | Water ☒ | | Street MACADAM | ☒ | ☐ |
| Gas ☒ | | Sanitary Sewer ☒ | Alley None | | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X   FEMA Map # 3604970382F   FEMA Map Date 9/5/2007
Are the utilities and/or off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?    ☐ Yes ☒ No  If Yes, describe

### IMPROVEMENTS

| General Description | | Foundation | | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|---|---|
| Units ☒ Two ☐ Three ☐ Four | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls pour conc/avg | Floors wood-cerm/avg |
| ☐ Accessory Unit (describe below) | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls cement/avg | Walls drywall/avg |
| # of Stories 2 | # of bldgs. 1 | Basement Area 1,105 sq.ft. | | Roof Surface asphalt/avg | Trim/Finish wood/avg |
| Type ☐ Det. ☒ Att. ☒ S-Det./End Unit | | Basement Finish 0 % | | Gutters & Downspouts alum/poor | Bath Floor cermamic/avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | ☒ Outside Entry/Exit ☒ Sump Pump | | Window Type slide/avg | Bath Wainscot cermamic/avg |
| Design (Style) Col/sd/avg | | Evidence of ☐ Infestation | | Storm Sash/Insulated yes/avg | Car Storage |
| Year Built 2005 | | ☒ Dampness ☐ Settlement | | Screens yes/avg | ☒ None |
| Effective Age (Yrs) 10 | | Heating/Cooling | Amenities | | ☐ Driveway  # of Cars 1 |
| Attic ☒ None | | ☐ FWA ☐ HWBB ☐ Radiant | Fireplace(s) # 0 ☐ Woodstove(s) # 0 | | Driveway Surface concrete |
| ☐ Drop Stair ☐ Stairs | | ☐ Other  Fuel gas | Patio/Deck none ☒ Fence chain | | ☐ Garage  # of Cars 0 |
| ☐ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | Pool none ☐ Porch none | | ☐ Carport  # of Cars 0 |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | Other None ☐ Other (describe) | | ☐ Att. ☐ Det. ☐ Built-in |

# of Appliances  Refrigerator 2  Range/Oven 2  Dishwasher  Disposal  Microwave  Washer/Dryer  Other (describe)

| Unit # 1 contains: | 5 Rooms | 3 Bedrooms | 2.0 Bath(s) | 1,105 Square Feet of Gross Living Area |
|---|---|---|---|---|
| Unit # 2 contains: | 5 Rooms | 3 Bedrooms | 2.0 Bath(s) | 1,105 Square Feet of Gross Living Area |
| Unit # 3 contains: | Rooms | Bedrooms | Bath(s) | Square Feet of Gross Living Area |
| Unit # 4 contains: | Rooms | Bedrooms | Bath(s) | Square Feet of Gross Living Area |

Additional features (special energy efficient items, etc.)   NONE NOTED

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   See Addendum

## Small Residential Income Property Appraisal Report    File # 1527

**IMPROVEMENTS**

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe.

Is the property subject to rent control? ☐ Yes ☒ No  If Yes, describe

**COMPARABLE RENTAL DATA**

The following properties represent the most current, similar, and proximate comparable rental properties to the subject property. This analysis is intended to support the opinion of the market rent for the subject property.

| FEATURE | SUBJECT | COMPARABLE RENTAL # 1 | COMPARABLE RENTAL # 2 | COMPARABLE RENTAL # 3 |
|---|---|---|---|---|
| Address | 13-50 Pinson St  Far Rockaway, NY 11691 | 1354 Pinson St  Far Rockaway, NY 11691 | 1056 McBride St  Far Rockaway, NY 11691 | 2918 Brookhaven Ave  Far Rockaway, NY 11691 |
| Proximity to Subject | | 0.01 miles E | 0.24 miles SW | 0.74 miles SW |
| Current Monthly Rent | $ | $ 2,300 | $ 2,200 | $ 1,850 |
| Rent/Gross Bldg. Area | $ sq.ft. | $ 2.30 sq.ft. | $ 1.90 sq.ft. | $ 1.68 sq.ft. |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No |
| Data Source(s) | | mls#3063179 | mls#3026036 | mls#3084988 |
| Date of Lease(s) | | 1 year | 1 year | 1 year |
| Location | Residential | Residential | Residential | Residential |
| Actual Age | 15 | 89 | 12 | 14 |
| Condition | Poor | updated | updated | updated |
| Gross Building Area | 2,210 | 1,000 | 1,160 | 1,100 |

| Unit Breakdown | Rm Count Tot Br Ba | Size Sq. Ft. | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot Br Ba | Size Sq. Ft. | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2,210 | | 1,000 | 2,300 | | 1,160 | 2,200 | | 1,100 | 1,850 |
| Unit # 1 | 5 3 2.0 | 1,105 | 7 3 2.0 | 1,000 | $ 2,300 | 6 3 2.0 | 1,160 | $ 2,200 | 6 3 2.0 | 1,100 | $ 1,850 |
| Unit # 2 | 5 3 2.0 | 1,105 | | | $ | | | $ | | | $ |
| Unit # 3 | | | | | $ | | | $ | | | $ |
| Unit # 4 | | | | | $ | | | $ | | | $ |
| Utilities Included | water & sewer | | water & sewer | | | water & sewer | | | water & sewer | | |

Analysis of rental data and support for estimated market rents for the individual subject units reported below (including the adequacy of the comparables, rental concessions, etc.)   The subject's rent is market rent.

**SUBJECT RENT SCHEDULE**

Rent Schedule: The appraiser must reconcile the applicable indicated monthly market rents to provide an opinion of the market rent for each unit in the subject property.

| | Leases | | Actual Rents | | | Opinion of Market Rent | | |
|---|---|---|---|---|---|---|---|---|
| | Lease Date | | Per Unit | | Total Rents | Per Unit | | Total Rents |
| Unit # | Begin Date | End Date | Unfurnished | Furnished | | Unfurnished | Furnished | |
| 1 | Owner | Owner | $ | $ | $ 0 | $ | $ | $ 1,850 |
| 2 | Owner | Owner | | | 0 | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |

Comment on lease data

Total Actual Monthly Rent $ | Total Gross Monthly Rent $ 1,850
Other Monthly Income (itemize) $ 0 | Other Monthly Income (itemize) $ 0
Total Actual Monthly Income $ | Total Estimated Monthly Income $ 1,850

Utilities included in estimated rents ☐ Electric ☒ Water ☒ Sewer ☒ Gas ☐ Oil ☒ Trash collection ☐ Cable ☐ Other

Comments on actual or estimated rents and other monthly income (including personal property)   The subject's rent is market rent.

**PRIOR SALE HISTORY**

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   GEO DATA
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   GEO DATA
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | GEO DATA | GEO DATA | GEO DATA | GEO DATA |
| Effective Date of Data Source(s) | 03/03/2020 | 03/03/2020 | 03/03/2020 | 03/03/2020 |

Analysis of prior sale or transfer history of the subject property and comparable sales   none noted

Form 1025 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Small Residential Income Property Appraisal Report

File # 1527

| | | | |
|---|---|---|---|
| There are n/a comparable properties currently offered for sale in the subject neighborhood ranging in price from $ n/a to $ n/a | | | |
| There are n/a comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ n/a to $ n/a | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 13-50 Pinson St Far Rockaway, NY 11691 | 2335 Enright Rd Far Rockaway, NY 11691 | 2934 Gerson Ct Far Rockaway, NY 11691 | 1829 Everdell Ave Far Rockaway, NY 11691 |
| Proximity to Subject | | 0.25 miles NW | 0.76 miles SW | 0.45 miles SE |
| Sale Price | $ | $ 320,000 | $ 520,000 | $ 580,000 |
| Sale Price/Gross Bldg. Area | $ sq.ft. | $ 172.97 sq.ft. | $ 238.10 sq.ft. | $ 306.88 sq.ft. |
| Gross Monthly Rent | $ 1,850 | $ 1,800 | $ 2,150 | $ 2,500 |
| Gross Rent Multiplier | | 177.78 | 241.86 | 232.00 |
| Price per Unit | $ | $ 160,000 | $ 260,000 | $ 290,000 |
| Price per Room | $ | $ 35,556 | $ 43,333 | $ 48,333 |
| Price per Bedroom | $ | $ 80,000 | $ 86,667 | $ 96,667 |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No |
| Data Source(s) | | mls#3151927 | mls#3110233 | mls#3096492 |
| Verification Source(s) | | ASSESSMENT RECORD | ASSESSMENT RECORD | ASSESSMENT RECORD |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−) Adjustment | DESCRIPTION | +(−) Adjustment | DESCRIPTION | +(−) Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing | | Conv | | Conv | | Conv | |
| Concessions | | none | | none | | none | |
| Date of Sale/Time | | 01/22/2020 | | 06/28/2019 | | 12/26/2019 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 2,625 sf | 5000 sf | −5,000 | 3006 sf | | 1509 sf | +3,000 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Col/sd/avg | Col/det/avg | −20,000 | Col/sd/avg | | col/att | +20,000 |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 14 | 100 | | 18 | | 13 | |
| Condition | Poor | As is | +50,000 | Updated | −60,000 | Updated | −60,000 |
| Gross Building Area | 2,210 | 1,850 | +18,000 | 2,184 | +2,000 | 1,890 | +16,000 |
| Unit Breakdown | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Unit # 1 | 5  3  2.0 | 3  1  1.0 | +8,000 | 6  3  2.0 | | 6  3  2.0 | |
| Unit # 2 | 5  3  2.0 | 6  3  1.1 | +4,000 | 6  3  2.0 | | 6  3  2.0 | |
| Unit # 3 | | | | | | | |
| Unit # 4 | | | | | | | |
| Basement Description | 1,105 Sq.Ft. | Full Bsmt | | Full Bsmt | | Full Bsmt | |
| Basement Finished Rooms | unfin | unfin | | .5 bath | −2,000 | Finished | −75,000 |
| Functional Utility | Repairs | Repairs | | average | −70,000 | average | −70,000 |
| Heating/Cooling | ghw/none | ohw/none | | ghw/none | | ghw/none | |
| Energy Efficient Items | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Parking On/Off Site | None | 1 car | −10,000 | None | | None | |
| Porch/Patio/Deck | none | none | | none | | none | |
| Net Adjustment (Total) | | ☒+ ☐− $ | 45,000 | ☐+ ☒− $ | −130,000 | ☐+ ☒− $ | −166,000 |
| Adjusted Sale Price | | Net Adj. 14.1 % | | Net Adj. 25.0 % | | Net Adj. 28.6 % | |
| of Comparables | | Gross Adj. 35.9 % $ | 365,000 | Gross Adj. 25.8 % $ | 390,000 | Gross Adj. 42.1 % $ | 414,000 |
| Adjusted Price Per Unit (Adj. SP Comp / # of Comp Units) | $ | $ 182,500 | | $ 195,000 | | $ 207,000 | |
| Adjusted Price Per Room (Adj. SP Comp / # of Comp Rooms) | $ | $ 40,556 | | $ 32,500 | | $ 34,500 | |
| Adjusted Price Per Bedrm (Adj. SP Comp / # of Comp Bedrooms) | $ | $ 91,250 | | $ 65,000 | | $ 69,000 | |
| Value per Unit | $ 194,833 X | 2 Units = $ | 389,666 | Value per GBA $ | 239 X | GBA = $ | |
| Value per Rm. | $ 36,852 X | 10 Rooms = $ | 368,520 | Value per Bdrms. $ | 75,083 X | 6 Bdrms. = $ | 450,498 |

Summary of Sales Comparison Approach including reconciliation of the above indicators of value.    The adjusted sale price range is $414,000 TO $365,000.
The comps were selected because they are locationally, physically and functionally the most similar to the subject.  There was an adjustment for
Functional Utility for the comps due to the subject has repairs that need to be addressed.  The adjustment was derived from market data.
Comp#1 was listed on MLS as "as is " sale. Comp#2 and #3 were updated/mint condition.

Indicated Value by Sales Comparison Approach $ 390,000

| | | | |
|---|---|---|---|
| Total gross monthly rent $ 1,850 X gross rent multiplier (GRM) 217 = $ 401,450 | | | Indicated value by the Income Approach |

Comments on income approach including reconciliation of the GRM    THE GRM IS 216.  The comps rents were estimated.

| | | | |
|---|---|---|---|
| Indicated Value by: Sales Comparison Approach $ 390,000 | Income Approach $ 401,450 | Cost Approach (if developed) $ 397,988 | |

THE MARKET DATA APPROACH IS DEEMED THE MOST RELIABLE INDICATOR OF VALUE.  THE INCOME APPROACH AND THE COST
APPROACH SUPPORT FINAL VALUE.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  ALL NORMAL LIMITING
CONDITIONS APPLY.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 390,000 , as of 03/03/2020 , which is the date of inspection and the effective date of this appraisal.

Form 1025 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Small Residential Income Property Appraisal Report
File # 1527

A SEARCH WAS PERFORMED ON THE SUBJECT'S NEIGHBORHOOD. A 1 MILE RADIUS AND A ONE YEAR TIME FRAME WAS USED.
THE OTHER LAND USE IS VACANT LAND THIS HAS NO EFFECT ON MARKETABILITY OR VALUE.
THE COMPARABLE'S GLA WAS ADJUSTED AT $50.00 A SQUARE FOOT AND ROUNDED TO THE NEAREST THOUSAND.
THE SITE ADJUSTMENT IS $1,000 PER HUNDRED OF AN ACRE. THE COMPARABLES WERE ADJUSTED ACCORDINGLY.
THE ADJUSTMENTS WERE DERIVED FROM MARKET DATA AND PAIRED SALES.
THE COMPARABLES ADJUSTED SALE PRICE RANGE MAY EXCEED GUIDELINES BUT THAT WAS NECESSARY TO BRACKET THE
SUBJECT'S AMENITIES. THIS HAS NO EFFECT ON THE ACCURACY OF THE RECONCILIATION.
THE COMPS MAY EXCEED THE NET/GROSS/LINE ADJUSTMENT GUIDELINE BUT THIS WAS NECESSARY TO SHOW THE MARKET'S
REACTION TO THE AMENITIES.
ONE OF THE SECOND LEVEL BEDROOMS WAS NOT INSPECTED.
COMP#1 WAS FOUND ON MLS. MLS STATES THAT THE PROPERTY IS "AS IS" AND NEEDS EXTENSIVE REPAIRS. CASH ONLY
COMP#2 WAS FOUND ON MLS. MLS PHOTOS SHOW UPDATED KITCHENS.
COMP#3 WAS FOUND ON MLS. MLS STATES THE PROPERTY IS IN MINT CONDITION. THERE WERE NO INTERIOR PHOTOS.
THE APPRAISER USED THE EXTRAORDINARY ASSUMPTION THAT THE MLS INFORMATION IS CORRECT.

*ADDITIONAL COMMENTS*

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   THE SITE VALUE IS DETERMINED BY VACANT
LAND SALES.

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 130,000 |
| Source of cost data  Local contractor | DWELLING  2,210 Sq.Ft. @ $ 135.00 | | =$ | 298,350 |
| Quality rating from cost service  AVG  Effective date of cost data  2019 | 1,105 Sq.Ft. @ $ 50.00 | | =$ | 55,250 |
| Comments on Cost Approach (gross building area calculations, depreciation, etc.) | driveway | | =$ | 10,000 |
| REPLACEMENT  COST HAS BEEN | Garage/Carport  Sq.Ft. @ $ | | =$ | |
| OBTAINED FROM NATIONAL COST ESTIMATORS. | Total Estimate of Cost-New | | =$ | 363,600 |
| PHYSICAL AGE/LIFE METHOD USED TO DETERMINE | Less  Physical  Functional  External | | | |
| PHYSICAL DEPRECIATION. | Depreciation  60,612  60,000 | | =$( | 120,612) |
| | Depreciated Cost of Improvements | | =$ | 242,988 |
| | "As-is" Value of Site Improvements | | =$ | 25,000 |
| Estimated Remaining Economic Life (HUD and VA only)  50 Years | INDICATED VALUE BY COST APPROACH | | =$ | 397,988 |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases          Total number of units          Total number of units sold
Total number of units rented          Total number of units for sale          Data source(s)
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

*PUD INFORMATION*

Form 1025 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Small Residential Income Property Appraisal Report    File # 1527

This report form is designed to report an appraisal of a two- to four-unit property, including a two- to four-unit property in a planned unit development (PUD). A two- to four-unit property located in either a condominium or cooperative project requires the appraiser to inspect the project and complete the project information section of the Individual Condominium Unit Appraisal Report or the Individual Cooperative Interest Appraisal Report and attach it as an addendum to this report.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements, including each of the units. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1025 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Small Residential Income Property Appraisal Report   File # 1527

**APPRAISER'S CERTIFICATION:**    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property, including all units. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison and income approaches to value. I have adequate market data to develop reliable sales comparison and income approaches to value for this appraisal assignment. I further certify that I considered the cost approach to value but did not develop it, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1025 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Small Residential Income Property Appraisal Report    File # 1527

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name    MARY SOPER | Name |
| Company Name    MARY SOPER APPRAISALS | Company Name |
| Company Address    Ocean Avenue, Bayport, NY 11705 | Company Address |
| Telephone Number    631-419-6181 | Telephone Number |
| Email Address    MSAPPRAISALS1@OPTONLINE.NET | Email Address |
| Date of Signature and Report    03/09/2020 | Date of Signature |
| Effective Date of Appraisal    03/03/2020 | State Certification # |
| State Certification #    45000041757 | or State License # |
| or State License # | State |
| or Other (describe)    State # | Expiration Date of Certification or License |
| State    NY | |
| Expiration Date of Certification or License    06/08/2021 | **SUBJECT PROPERTY** |

**ADDRESS OF PROPERTY APPRAISED**

13-50 Pinson St
Far Rockaway, NY 11691

**SUBJECT PROPERTY**

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

APPRAISED VALUE OF SUBJECT PROPERTY $    390,000

**LENDER/CLIENT**

Name
Company Name    N/A
Company Address

Email Address

**COMPARABLE SALES**

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Form 1025 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Exhibit D

**"Exhibit D"**

000111-000002-000002-000222 2033095 4595LT01_1



**Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust**

12/10/2019

LOYCE TAMISI
1350 PINSON ST
FAR ROCKAWAY, NY 11691

Re:     Account Number:     XXX3005
        Mortgagor(s):       LOYCE TAMISI
        Property:           1350 PINSON ST
                            FAR ROCKAWAY, NY 11691

### NOTIFICATION OF ASSIGNMENT, SALE OR TRANSFER OF YOUR MORTGAGE LOAN

The ownership of your mortgage loan has been acquired by Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. This transfer was effective 11/15/2019.

The assignment, sale or transfer of the mortgage loan does not affect any term or condition of the Mortgage, Deed of Trust, Note or any subsequent modification of your original loan terms. The transfer of ownership of your mortgage loan to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust has not been publicly recorded.

Select Portfolio Servicing, Inc. is the servicer of your loan until 12/10/2019. **After this date, your new loan servicer will be Selene Finance LP.** You may contact Selene Finance LP by calling (877) 768-3759 or written correspondence should be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 421517, Houston, TX 77242-4239. We also encourage you to visit Selene's website at www.selenefinance.com for additional helpful information.

**Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust does not service your loan.** It is important that your monthly payments be sent directly to your servicer and NOT to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. All correspondence and inquiries concerning your mortgage loan should be addressed to your servicer. The servicer has authority to act on our behalf with regard to the administration of your mortgage loan and respond to any questions about your mortgage loan.

In the unlikely event you find it necessary to contact **Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust**, you may write us at the address listed below or you may telephone us at 612-376-1580.

Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust
500 Delaware Ave, 11th Floor
Wilmington, DE 19801

**Please send all payments to your appropriate servicer. Payments received by Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust may be returned OR forwarded to the appropriate servicer and this may result in late charges and your account becoming past due. Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust is not responsible for late charges or other consequences of misdirected payments.**

**Partial Payment Policy -** Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full payment to your loan. If this loan is sold, your new lender may have a different policy.

Exhibit E

**"Exhibit E"**



December 2, 2019

 LOYCE TAMISI
1350 PINSON ST
FAR ROCKAWAY, NY 11691-0125

**Account Number:** ⬛⬛⬛7449
**Property Address:** 1350 PINSON ST
FAR ROCKAWAY, NY 11691

Dear LOYCE TAMISI:

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, received a complete Assistance Review Application on 11/26/2019; however, after additional review, additional offer documentation (for example, HUD-1/Closing Disclosure, Real Estate Purchase Contract, etc.) is needed to complete our evaluation of the short sale offer that was submitted for approval. Please reference the previous letter sent to you detailing the offer documentation still needed. We must receive this documentation within the next thirty (30) days. Once we receive the additional documentation to complete your application we expect to complete our evaluation within thirty (30) days of the date we received the additional information.

All options are offered at no cost to our customers. If your property secures other liens, you should consider contacting the servicer(s) of those liens to discuss available loss mitigation options.

If there is any bankruptcy proceeding pending that includes the subject property, then you may need to obtain Bankruptcy Court approval prior to any refinance or sale of the property. Similarly, you may need Bankruptcy Court approval of any permanent modification of the account.

Once we receive the additional required short sale offer documentation, we will evaluate your Assistance Review Application for all available loss mitigation options for which you are eligible. Once SPS receives the additional information, the evaluation process will resume and a final decision will be sent to you within thirty (30) days of receiving the additional information. However, we cannot complete the evaluation and send you the decision until we receive all required offer documentation.

Once you have received and submitted an offer, we may require additional documentation regarding the submitted offer to approve the short sale on the property. If additional documentation is required for the short sale offer review, you will be notified in writing and given a reasonable opportunity to submit the documentation. You can find information about the status of your evaluation at www.spservicing.com.

Foreclosure protections could end if we do not receive the additional information as requested.

**Important Information about Foreclosure Proceedings**

Do not ignore any legal notices about your home. We may be able to postpone foreclosure proceedings; however, foreclosure postponement is not guaranteed and you will need to respond to all notices to protect your legal rights.



You are entitled to certain foreclosure protections because we have received a complete Assistance Review Application. We will not commence or initiate the foreclosure process prior to evaluating your complete Assistance Review Application. If we have already initiated the foreclosure process, we will not conduct a foreclosure sale prior to evaluating your complete Assistance Review Application. If a foreclosure sale has already been scheduled, we will instruct our attorneys to file a motion to postpone such sale. However, it is possible that a court will deny the motion and the sale will proceed. If that happens, we will be unable to provide loss mitigation.

You may be entitled to additional protections under State or Federal law.

If you have any questions about the collection or foreclosure process, please call us. If you do not understand the legal consequences of foreclosure, we encourage you to contact an attorney or a HUD-approved housing counselor for assistance. You may call 800-569-4287 or TDD 800-877-8339 for the housing counseling agency nearest you, or go to their website at: http://www.hud.gov/offices/hsg/sfh/hcc/hcs. You may also be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure avoidance agency, which you may reach at 888-995-HOPE (4673).

SPS is committed to home retention and offers many assistance options designed for customers who are experiencing temporary or permanent hardships. These options are offered at no cost to our customers and may include structured repayment plans, modifications, or account settlement alternatives, such as a short sales, or deeds-in-lieu of foreclosure. Please call us at 888-818-6032 if you would like to discuss other loss mitigation options.

### Notice of Error or Information Request

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

### Servicemembers Civil Relief Act (SCRA)

SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than ours. Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

**Select Portfolio Servicing, Inc.**
**PO Box 65250 Salt Lake City, UT 84165-0250**

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

### Contact Us

Exhibit F

**"Exhibit F"**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007061901175001001E2EDC

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: 2007061901175001 | Document Date: 08-17-2006 | Preparation Date: 06-19-2007 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| THRESHOLD LAND, INC., | THRESHOLD LAND, INC., |
| 584 MAIN STREET | 584 MAIN STREET |
| SUITE 2 | SUITE 2 |
| ISLIP, NY 11751 | ISLIP, NY 11751 |
| 631-224-1345 | 631-224-1345 |
| TRICIAMILLER@THRESHOLDLAND.COM | TRICIAMILLER@THRESHOLDLAND.COM |

**PROPERTY DATA**

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 15659 6 | Entire Lot | 13-50 PINSON STREET |

Property Type: 1- 2 FAM WITH ATTCH GAR /OR VACANT LAND

**CROSS REFERENCE DATA**

CRFN: 2006000540786

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| ARGENT MORTGAGE COMPANY, LLC | DLJ MORTGAGE CAPITAL, INC. |
| ONE CITY BLVD WEST | 3815 SOUTHWEST TEMPLE |
| ORANGE, CA 92868 | SALT LAKE CITY, UT 84115 |

**FEES AND TAXES**

| Mortgage | | Filing Fee: | |
|---|---|---|---|
| Mortgage Amount: | $ 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ 0.00 |
| TAXES: County (Basic): | $ 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ 0.00 | | $ 0.00 |
| Spec (Additional): | $ 0.00 | | |
| TASF: | $ 0.00 | |
| MTA: | $ 0.00 | |
| NYCTA: | $ 0.00 | |
| Additional MRT: | $ 0.00 | |
| TOTAL: | $ 0.00 | |
| Recording Fee: | $ 47.00 | |
| Affidavit Fee: | $ 0.00 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      06-22-2007 17:30
City Register File No.(CRFN):
2007000325199

*Annette M. Hill*
*City Register Official Signature*

Exhibit G

Exhibit G

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK

2020 FEB 25  P 1: 32

RECEIVED

-------------------------------------------------X

IN RE:                                                          CHAPTER 13

Loyce Tamisi                                           CASE NO.: **1-20-40388-cec**

                            DEBTOR(S).
-------------------------------------------------X

## CHAPTER 13 PLAN

☑ Check this box if this is an amended plan.  List below the sections of the plan which have been
changed:
   Section 1.1c, part 2.2, part 5, Part 9 (9.1)

## PART 1: NOTICES

**To Debtors:** This form sets out options that may be appropriate in some cases, but the presence of an option on the form
does not indicate that the option is appropriate in your circumstance or that it is permissible in your judicial district. Plans
that do not comply with the local rules for the Eastern District of New York may not be confirmable. If you do not have an
attorney, you may wish to consult one.

**To Creditors:** Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. You should
read this plan carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult one.
If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file an objection
to confirmation at least 7 days before the date set for the hearing on confirmation, unless otherwise ordered by the
Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is
filed. See Bankruptcy Rule 3015. In addition, you may need to file a timely proof of claim in order to be paid under any
plan.

**1.1:** The following matters may be of particular importance. ***Debtors must check one box on each line to state
whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if
both or neither boxes are checked, the provision will be ineffective if set out later in the plan.***

| | | | |
|---|---|---|---|
| a. | A limit on the amount of a secured claim, set out in Section 3.4, which may result in a partial payment or no payment at all to the secured creditor | ☑ Included | ☐ Not included |
| b. | Avoidance of a judicial lien or nonpossessory, non-purchase-money security interest, set out in Section 3.6 | ☐ Included | ☑ Not included |
| c. | Nonstandard provisions, set out in Part 9 | ☑ Included | ☐ Not Included |

**1.2:** The following matters are for informational purposes.

| | | | |
|---|---|---|---|
| a. | The debtor(s) is seeking to modify a mortgage secured by the debtor(s)'s principal residence, set out in Section 3.3 | ☐ Included | ☑ Not included |
| b. | Unsecured Creditors, set out in Part 5, will receive 100% distribution of their timely filed claim | ☐ Included | ☑ Not included |

**PART 2: PLAN PAYMENTS AND LENGTH OF PLAN**

**2.1 : The post-petition earnings of the debtor(s) are submitted to the supervision and control of the Trustee and the Debtor(s) shall pay to the Trustee for a period of months as follows:**

$ __1600__ per month commencing __02/24/2020__ through and including __02/24/2023__ for a period of __36__ months; and

$_____ per month commencing_____ through and including_____ for a period of _____ months.

⬜ Continued on attached separate page(s).

**2.2 : Income tax refunds.**

If general unsecured creditors are paid less than 100%, as provided in Part 5 of this plan, then during the pendency of this case, the Debtor(s) will provide the Trustee with signed copies of filed federal and state tax returns for each year commencing with the tax year __2019__, no later than April 15th of the year following the tax period. **In addition to the regular monthly plan payments**, indicated tax refunds are to be paid in full to the Trustee upon receipt, however, no later than June 15th of the year in which the tax returns are filed.

**2.3 : Additional payments.**

*Check one.*
   ☑ **None.** *If "None" is checked, the rest of §2.3 need not be completed.*
   ☐ Debtor(s) will make additional payment(s) to the Trustee from other sources, as specified below. Describe the source, estimated amount, and date of each anticipated payment.

_____

_____

**PART 3: TREATMENT OF SECURED CLAIMS**

**3.1 : Maintenance of payments (including the debtor(s)'s principal residence).**

*Check one.*
   ☑ **None.** *If "None" is checked, the rest of §3.1 need not be completed.*
   ☐ Debtor(s) will maintain the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed directly by the debtor(s).

| Name of Creditor | Last 4 Digits of Account Number | Principal Residence (check box) | Description of Collateral | Current Installment Payment (including escrow) |
|---|---|---|---|---|
| | | ⬜ | | |
| | | ⬜ | | |

☐ Continued on attached separate page(s).

## 3.2 : Cure of default (including the debtor(s)'s principal residence).

*Check one.*

☐ **None.** *If "None" is checked, the rest of §3.2 need not be completed.*

☑ Any existing arrearage on a listed claim will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated below. Unless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below. In the absence of a contrary timely filed proof of claim, the amounts listed below are controlling.

| Name of Creditor | Last 4 Digits of Acct No. | Principal Residence (check box) ☐ | Description of Collateral | Amount of Arrearage | Interest Rate (if any) |
|---|---|---|---|---|---|
| DLJ Mortgage Capital Inc / SPS | 7449 | ☑ | 1350 Pinson St Far Rockaway, NY 11691 | 0.00 | 0 |

☐ Continued on attached separate page(s).

## 3.3 : Modification of a mortgage secured by real property of the debtor(s).

*Check one.*

☑ **The debtor(s) is not seeking to modify a mortgage secured by a property of the debtor(s).**

☐ **The debtor(s) is seeking to modify a mortgage secured by the debtor(s)'s principal residence and shall serve and file a Loss Mitigation Request under the Court's Loss Mitigation Program pursuant to General Order #676.** *Complete the paragraph below.*

The mortgage due to_____(creditor name) on the property known as _____ (property address) under account number ending x_____(last four digits of account number) is in default. All arrears, including all past due payments, late charges, escrow deficiency, legal fees and other expenses due to the mortgagee totaling $_____(total amount of arrearage), may be capitalized pursuant to a loan modification. The new principal balance, including capitalized arrears will be $_____(current total balance), and will be paid at _____% interest amortized over_____years with an estimated monthly payment of $_____(total proposed monthly modified payment) including interest and escrow of $_____(escrow portion of monthly payment). The estimated monthly payment, including proposed principal, interest, and escrow, shall be paid directly to the trustee while loss mitigation is pending and until such time as the debtor(s) has commenced payment under a trial loan modification. Contemporaneous with the commencement of a trial loan modification, the debtor(s) will amend the Chapter 13 Plan and Schedule J to reflect the terms of the trial agreement, including the direct payment to the secured creditor going forward by the debtor(s).

☐ Continued on attached separate page(s).

☐ **The debtor(s) is seeking to modify a mortgage outside of the Court's Loss Mitigation Program and shall file a status letter on loss mitigation efforts seven (7) days prior to each scheduled Hearing on Confirmation.** *Complete the paragraph above.*

☐ **The debtor(s) has been offered and accepted a trial loan modification.** *Complete the paragraph below.*

The mortgage due to_____(creditor name) on the property known as_____ (property address) under account number ending x_____(last four digits of account number) is in default as of this date. The Debtor(s) has accepted a trial loan modification. Monthly payments under the trial period plan, in the amount stated in Section 3.1 above, shall be paid directly to the secured creditor commencing on_____, _____

and shall continue until a permanent modification agreement is authorized by the Court. Upon such Court authorization, except as otherwise expressly provided by Court Order, the Trustee is directed to cease any further disbursements on account of arrearage due on the claim of_____. The proof of claim affected by this paragraph is reflected on the Court's Claims Register as Claim #_____, originally filed for the benefit of _____on_____, _____ in the total amount of $_____. After Court authorization of the permanent modification agreement, if all other requirements for confirmation are satisfied, this plan may be confirmed without further amendment incorporating the order only if this plan is timely served upon the secured creditor on the address for notices indicated on the proof of claim.

❏  Continued on attached separate page(s).

### 3.4 : Request for valuation of security, payment of fully secured claims, and modification of under-secured claims.

*Check one.*

❏  **None.** *If "None" is checked, the rest of §3.4 need not be completed.*

***The remainder of this paragraph is only effective if the applicable box in Part 1 of this plan is checked.***

☑  The debtor(s) shall file a motion to determine the value of the secured claims listed below. Such claim shall be paid pursuant to order of the court upon determination of such motion. This paragraph shall not modify liens underlying any secured claims under non-bankruptcy law absent an order determining such motion, and until either completion of payments under the plan or entry of discharge of the debtor(s), as determined by the Court.

| Name of Creditor | Last 4 Digits of Acct No. | Description of Collateral | Value of Collateral | Total Amount of Claim | Estimated Amount of Creditor's Secured Claim | Estimated Amount of Creditor's Unsecured Claim |
|---|---|---|---|---|---|---|
| **DLJ Mortgage Capital Inc / SPS** | 7449 | 1350 Pinson St Far Rockaway, NY 11691 | 380,000.00 | 0.00 | 0.00 | 0.00 |

❏  Continued on attached separate page(s).

### 3.5 : Secured claims on personal property excluded from 11 U.S.C. §506.

*Check one.*

☑  **None.** *If "None" is checked, the rest of §3.5 need not be completed.*

❏  The claims listed below were either:

    ❏  Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s); or

    ❏  incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid pursuant to §3.1 and/or §3.2. (The claims must be referenced in those sections as well.) Unless otherwise ordered by the court, the claim amount stated on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) controls over any contrary amount listed below. In the absence of a contrary timely filed proof of claim, the amounts stated below are controlling.

| Name of Creditor | Last 4 Digits of Acct No. | Collateral | Amount of Claim | Interest Rate |
|---|---|---|---|---|

☐ Continued on attached separate page(s).

### 3.6 : Lien avoidance.

*Check one.*

☑ **None.** *If "None" is checked, the rest of §3.6 need not be completed.*

**The remainder of this paragraph is only effective if the applicable box in Part 1 of this plan is checked.**

☐ The debtor(s) shall file a motion to avoid the following judicial liens or nonpossessory, non-purchase money security interests as the claims listed below impair exemptions to which the debtor(s) are entitled under 11 U.S.C. §522(b) or applicable state law. See 11 U.S.C. §522(f) and Bankruptcy Rule 4003(d). Such claim shall be paid pursuant to order of the court upon determination of such motion.

| Name of Creditor | Attorney for Creditor | Lien Identification | Description of Collateral | Estimated Amount of Secured Claim | Interest Rate on Secured Portion, if any | Estimated Amount of Unsecured Claim |
|---|---|---|---|---|---|---|

☐ Continued on attached separate page(s).

### 3.7 : Surrender of collateral.

*Check one.*

☑ **None.** *If "None" is checked, the rest of §3.7 need not be completed.*

☐ The debtor(s) elect to surrender to each creditor listed below the collateral that secures the creditor's claim. The debtor(s) request that upon confirmation of this plan the stay under 11 U.S.C. §362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated. Any timely filed allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

| Name of Creditor | Last 4 Digits of Acct No. | Description of Collateral |
|---|---|---|

## PART 4: TREATMENT OF FEES AND PRIORITY CLAIMS

**4.1 : General.**

Trustee's fees and all allowed priority claims, including domestic support obligations other than those treated in §4.5, will be paid in full without post-petition interest.

**4.2 : Trustee's fees.**

Trustee's fees are governed by statute and may change during the course of the case.

**4.3 : Attorney's fees.**

The balance of the fees owed to the attorney for the debtor(s) is $_____.

**4.4 : Priority claims other than attorney's fees and those treated in §4.5.**

*Check One.*

- ❑ **None.** *If "None" is checked, the rest of §4.4 need not be completed.*
- ☑ The debtor(s) intend to pay the following priority claims through the plan:

| Name of Creditor | Estimated Claim Amount |
|---|---|
| NYS Dept of Taxation & Finance | 18,000 |

❑ Continued on attached separate page(s).

**4.5 : Domestic support obligations.**

*Check One.*

- ☑ **None.** *If "None" is checked, the rest of §4.5 need not be completed.*
- ❑ The debtor(s) has a domestic support obligation and is current with this obligation. *Complete table below; do not fill in arrears amount.*
- ❑ The debtor(s) has a domestic support obligation that is not current and will be paying arrears through the Plan. *Complete table below.*

| Name of Recipient | Date of Order | Name of Court | Monthly DSO Payment | Amount of Arrears to be Paid through Plan, If Any |
|---|---|---|---|---|
| | | | | |

## PART 5: TREATMENT OF NONPRIORITY UNSECURED CLAIMS

Allowed nonpriority unsecured claims will be paid pro rata:

- ❏ Not less than the sum of $_____.
- ☑ Not less than_____30_____% of the total amount of these claims.
- ☑ From the funds remaining after disbursement have been made to all other creditors provided for in this plan.

If more than one option is checked, the option providing the largest payment will be effective.

## PART 6: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1 : The executory contracts and unexpired leases listed below are assumed and will be treated as specified. All other executory contracts and unexpired leases are rejected.**

*Check one.*
- ❏ **None.** *If "None" is checked, the rest of §6.1 need not be completed.*
- ☑ **Assumed items.** Current installment payments will be paid directly by the debtor(s) as specified below, subject to any contrary court order or rule. Arrearage payments will be disbursed by the trustee.

| Name of Creditor | Description of Leased Property or Executory Contract | Current Installment Payment by Debtor | Amount of Arrearage to be Paid by Trustee |
|---|---|---|---|
| **Verizon Fios** | **Home Phone, Internet Service** | 88.00 | 0.00 |
| **Tmobile** | **Cellphone Plan and phone Contract** | 135.00 | 0.00 |

## PART 7: VESTING OF PROPERTY OF THE ESTATE

Unless otherwise provided in the Order of Confirmation, property of the estate will vest in the debtor(s) upon completion of the plan.

## PART 8: POST-PETITION OBLIGATIONS

**8.1 :** Post-petition mortgage payments, vehicle payments, real estate taxes, and domestic support obligations are to be made directly by the debtor(s) unless otherwise provided for in the plan.

**8.2 :** Throughout the term of this Plan, the debtor(s) will not incur post-petition debt over $2,500.00 without written consent of the Trustee or by order of the Court.

**PART 9: NONSTANDARD PLAN PROVISIONS**

**9.1 : Check "None" or list nonstandard plan provisions.**

❏    **None.** *If "None" is checked, the rest of §9.1 need not be completed.*

*Under Bankruptcy Rule 3015(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the form plan or deviating from it. Nonstandard provisions set out elsewhere in this plan are ineffective.*

*The following plan provisions will be effective only if there is a check in the box "included" in §1.1(c).*

1. All secured claims will be disputed because they are not enforceable and could be disallowed.

2. Unsecured claim of Selene will be disputed because it is not enforceable or valid at time of filing for bankruptcy.

3. A proof of claim filed by SRP 2012-4, LLC will be disputed; it is not enforceable and will be disallowed hence $0 payments.

4. Once true secure claims are established/allowed, debtor will better decide a solution through  the plan or outside the plan

**PART 10: CERTIFICATION AND SIGNATURE(S):**

**10.1:** I/we do hereby certify that this plan does not contain any nonstandard provisions other than those set out in the final paragraph.

_____
Signature of Debtor 1

Dated:  02/21/20

_____
Signature of Debtor 2

Dated: _____

_____
Signature of Attorney for Debtor(s)

Dated: _____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re: Loyce Tamisi

                                        Case No. 1-20-40388-cec
                                        Chapter 13


                        Debtor(s)
-----------------------------------------------------------x


## CERTIFICATE OF SERVICE


The undersigned certifies that on  March 14th 2020                , a copy of the annexed Motion was
served by depositing same, enclosed in a properly addressed postage-paid envelope, in an official
depository under the exclusive care and custody of the United States Postal Service within the
State of New York, upon *[below specify the name and mailing address of each party served]*:

-Trustee Michael J. Macco 2950 Express Drive South Suite 109 Islandia, NY 11749
-Office of the United States Trustee Eastern District of NY (Brooklyn Office) U.S. Federal Office
Building 201 Varick St, Suite 1006 New York, NY 10014
-DLJ Mortgage Capital Inc/ GIFM Holdings Trust 11 Madison Avenue 3rd Floor New York NY 10010
-Select Portfolio Servicing Inc/SPS PO Box 65450 Salt Lake City UT 84165-0450
-Sheldon May & Associates Attorneys at Law 255 Merrick Rd Rockville Center NY 11570


Dated: March 14, 2020                        _____
                                             Signature